UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

PERRY PIERCE,

                        Plaintiff,                            Case No. 1:14-cv-684

v.                                               Honorable Paul L. Maloney

KALAMAZOO COUNTY JAIL,
TELMATE,

                        Defendants.

_____/

## OPINION

This is a civil rights action brought by a detainee pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the action for failure to state a claim.

## Factual Allegations

Plaintiff Perry Pierce is a detainee at the Kalamazoo County Jail.  Defendants are identified as the Kalamazoo County Jail (KCJ) and TelMate, a telephone company contracted by the jail to provide telephone services to detainees.

In his complaint, Plaintiff asserts that on June 4, 2014, TelMate deducted $25 from his telephone account for making a three-way call.  Plaintiff asserts that he never made a three-way call.  Instead, he called his uncle's house phone and then, after making contact with his uncle, Plaintiff told his uncle to call Plaintiff's niece.  Plaintiff allegedly wrote a grievance against TelMate and the jail regarding the $25 deduction.  TelMate claimed that it was following a rule of the jail.  The jail did not respond.  Plaintiff alleges that the jail does not have a "posted rule" stating that $25 will be taken from your account if you attempt to make a three-way call.  (Compl. 3, docket #1.)

In addition, Plaintiff complains that the jail is charging him for the medication that he needs for a mental illness, even though he qualifies for Medicaid and is unable to pay for the medication.  He also claims that he is not allowed to order "basic hygiene items" (soap, deodorant, and a washcloth) or "legal" materials (stamps and legal envelopes).  (*Id.* at 4.)  Instead, he is given paper, pencil and three stamped envelopes.

Finally, Plaintiff claims that the jail will not recognize his "dietary needs."  (*Id.*)  He is a vegetarian and does not eat meat for religious reasons.  The jail does not have a vegetarian menu, so he must "trade" meat products on his food tray for "non meat items."  (*Id.*)

As relief, Plaintiff requests an order requiring the jail to give him a copy of all "posted rules."  (*Id.* at Page ID#5.)  He also requests an order requiring the jail to charge Medicaid for his

- 2 -

medication, and $5,000 in damages against TelMate and KCJ for taking his money "under false pretenses." (*Id.*)

**Discussion**

I.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

- 3 -

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A. TelMate

TelMate allegedly deducted $25.00 from Plaintiff's telephone account, but TelMate is a private corporation.  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982);  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  As the Sixth Circuit has explained:

> This circuit recognizes three tests for determining whether private conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test.
>
> The public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state...." The typical examples are running elections or eminent domain.  The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state.  Finally, the nexus test requires a sufficiently close relationship (*i.e.* through state regulation or contract) between the state and the private actor so that the action may be attributed to the state.

*Moldowan v. City of Warren,* 578 F.3d 351, 399 (6th Cir. 2009) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995)).  In this case, there are no factual allegations which suggest that TelMate performed a public function, acted under coercion from the state, or maintained a sufficiently close relationship with the state such that its actions could be fairly attributed to the state.

- 4 -

Plaintiff alleges that TelMate contracted with the state to provide phone services to the county jail, but the provision of telephone services to inmates in a county jail, and then charging for them pursuant to its contract with the county, does not transform TelMate into a state actor for purposes of § 1983. *See, e.g.*, *Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982) ("Acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts."); *Chico-Polo v. Embarq Payphone Servs., Inc.*, No. 11-1427, slip op. at 3 (6th Cir. Mar. 15, 2012) (fact that defendant, Embarq Payphone Services, Inc., contracted with the state for delivery of telephone services to prisoners did not make it a state actor for purposes of § 1983) (citing *Iswed v. Caruso,* No. 1:08–cv–1118, 2009 WL 4251076, at *3 (W.D. Mich. Nov. 24, 2009)); *Belton v. SecurusTech.net*, No. 13–CV–4850, 2014 WL 524470, at *6 (E.D.N.Y. Feb. 7, 2014) (private provider of telephone services is not a state actor merely by virtue of its public contract with the jail); *Evans v. Skolnik*, 2009 WL 3763041, at *5 (D. Nev. Nov. 5, 2009) (private provider of telephone services for state prison inmates is not a state actor); *Breland v. Evercom System, Inc.*, No. 7:09–cv–60, 2009 WL 1490488, at *1 (M.D. Ga. May 27, 2009) (fact that Evercom provided phone service in the county jail does not constitute action under color of state law). *But cf. Walen v. Embarq Payphone Servs. Inc.*, No. 06-14201, 2009 WL 3012351, at *3 (E.D. Mich. Sept. 17, 2009) (Embarq is a state actor because it acted as a joint participant in monitoring prisoner telephone calls by providing a system that determined which calls were monitored). "Further, the fact that telephone companies are subject to substantial governmental regulation does not convert their actions into that of the state." *Iswed*, 2009 WL 4251076, at *6 (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  Nor is the provision of telephone services a

"traditional public function" delegated by the state to TelMate. *Iswed*, 2009 WL 4251076, at *6 (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Thus, TelMate will be dismissed.

### B. Kalamazoo County Jail

Plaintiff also sues the Kalamazoo County Jail. The jail is a building, not an entity capable of being sued in its own right. *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991); *see also Petty v. County of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir.2007) (a county sheriff's department is also not a "person" subject to liability under § 1983). Construing Plaintiff's complaint generously, however, the Court assumes that Plaintiff intended to name Kalamazoo County as a defendant.

A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447, 453-54 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784-85 (1997).

- 6 -

1. <u>Medication</u>

Plaintiff asserts that the county charges him for medication that it provides, even though he qualifies for Medicaid and is unable to pay.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

While the Eighth Amendment's prohibition against cruel and unusual punishment requires jails to provide medical care to inmates, it does not require that jails provide this care free of cost.  *See Reynolds v. Wagner,* 128 F.3d 166, 173-74 (3rd Cir. 1997) (deliberate indifference standard does not guarantee prisoners the right to be entirely free from bearing the cost of medical care); *accord Morris v. Livingston*, 739 F.3d 740, 748 (5th Cir. 2014); *McCabe v. Pa. Dep't of Corr.*, 523 F. App'x 858, 860 (3d Cir. 2013) ("Prisoners are simply not guaranteed the right to be entirely free from the cost-considerations that figure in medical care decisions."); *cf. City of Revere v. Mass.*

*Gen. Hosp.*, 463 U.S. 239, 245 n.7 (1983) ("Nothing we say here affects any right a hospital or governmental entity may have to recover from a detainee the cost of the medical services provided to him."). Plaintiff does not allege that he was deprived of medical care due to his inability to pay. Thus, he does not state an Eighth Amendment claim, or any other claim, regarding the county's practice of charging him for the cost of his care.

### 2. Hygiene Supplies

Plaintiff alleges that he is not allowed to order hygiene supplies. The Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" and "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). Basic elements of hygiene are among the essentials that prison officials must provide to prisoners. *Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986). Plaintiff does not allege that he was deprived of the items necessary for maintaining basic hygiene. Thus, an inability to order hygiene items is not sufficient to state a claim.

### 3. Legal Supplies

Plaintiff also alleges that he is not allowed to order legal supplies, though he receives a pencil, and a small supply of paper and stamped envelopes. Plaintiff's allegations implicate his right of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to

mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). Plaintiff acknowledges that he is receiving material for writing and for sending his documents to the court. He does not allege that the lack of additional materials has hindered his efforts to pursue a nonfrivolous legal claim. Consequently, he does not state an access-to-courts claim.

### 4. Food

Plaintiff asserts that he does not eat meat for religious reasons, but the jail does not have a vegetarian menu. Instead, it allows him to trade meat items for non-meat items. Thus, Plaintiff implies that the jail has infringed his right to freely exercise his religion. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior

infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff's claim fails because there is no indication that Defendants have limited or infringed upon his right to exercise his religious beliefs.  To the contrary, Plaintiff indicates that his beliefs have been accommodated by allowing him to trade for non-meat alternatives.  The mere fact that the jail does not have an established vegetarian menu does not state a First Amendment claim.

Moreover, Plaintiff does not allege that the food he has received is inadequate to sustain normal health, as would be necessary to state an Eighth Amendment claim.  *See Cunningham v. Jones,* 567 F.2d 653, 660 (6th Cir. 1977).  Thus, he does not state a claim with regard to the lack of a vegetarian menu.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: __November 3, 2014_____          __/s/ Paul L. Maloney_____
                                          Paul L. Maloney
                                          Chief United States District Judge